**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

---

| | |
|---|---|
| CHARLES CRUMMIE and JAMIE CRUMMIE,<br><br>                    **Plaintiffs,**<br><br>v.<br><br>**NURSE ASSIST, LLC, NEUROVEND, LLC d/b/a STATESIDE MEDICAL SUPPLY, AMAZON.COM, INC., TOWER THREE PARTNERS LLC, BPGC MANAGEMENT LP, SPINNAKER INTERNATIONAL LLC and R INVESTMENTS, LLC,**<br><br>                    **Defendants.** | Civil Action No. _____<br><br><br><br>**PERSONAL INJURY PRODUCTS LIABILITY ACTION**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

By and through their undersigned counsel and pursuant to the Federal Rules of Civil Procedure, Plaintiffs, Charles Crummie ("Plaintiff") and Jamie Crummie ("Plaintiff-Wife"), file this Complaint for Damages against Defendants, Nurse Assist, LLC, NeuroVend, LLC d/b/a Stateside Medical Supply, Amazon.com, Inc., Tower Three Partners LLC, BPGC Management LP, Spinnaker International LLC, and R Investments, LLC ("Defendants"), and in support thereof state the following:

## NATURE OF THE ACTION

1.      This action arises out of Plaintiff's use of Sterile 0.9% Normal Saline USP products (hereinafter, the "Product" and/or "SteriCare") that were manufactured, imported, sold, marketed, labeled, distributed, and financially controlled by Defendants.

2.      Due to Defendants' negligent, reckless and/or intentional misconduct, consumers,

like Plaintiff, used Defendants' Product, which was widely recalled on or about November 6, 2023 due to a "potential contamination."[1]

3.      In the voluntary recall, Defendants admitted that "[i]n populations most at risk, such as patients who are immunocompromised, there is a possibility the use of the affected product could potentially result in severe of life-threatening adverse events."[2]

4.      As a result of Plaintiff's use of Defendants' Product, Plaintiff acquired necrotizing fasciitis which led to left leg below the knee amputation.

5.      Plaintiffs suffered economic damages due to Defendants' misconduct.

6.      Plaintiffs allege the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief.

7.      Plaintiffs further believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## THE PARTIES

### Plaintiffs

8.      Plaintiff, Charles Crummie, is and at all times relevant hereto has been a citizen and resident of Greenville, South Carolina.

9.      Plaintiff-Wife, Jamie Crummie, is and at all times relevant hereto has been a citizen and resident of Greenville, South Carolina.

### Defendants

10.     Defendant, Nurse Assist, LLC ("Nurse Assist") is, and at all times relevant to this action was, a Delaware Limited Liability Company with its principal place of business located at

---

[1]     https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/nurse-assist-llc-issues-recall-09-sodium-chloride-irrigation-usp-and-sterile-water-irrigation-usp (last accessed February 6, 2026).
[2] *Id.*

4409 Haltom Road, Haltom City, Texas 76117.  Nurse Assist designs, manufacturers, markets, advertises, labels, distributes, packages, imports, supplies, and sells the Product at issue in this litigation.

11.    Upon reasonable information and belief, none of Nurse Assist's members are citizens of the State of South Carolina.

12.    Defendant, NeuroVend, LLC, d/b/a Stateside Medical Supply ("Stateside Medical"), is, and all times relevant to this action was, a Nebraska Limited Liability Company with its principal place of business located at 2108 South 156th Circle, Omaha, Nebraska, 68130. Stateside Medical designs, manufactures, markets, advertises, labels, distributes, packages, imports, supplies, and/or sells the Product at issue in this litigation.

13.    Upon reasonable information and belief, none of Stateside Medical's members are citizens of the State of South Carolina.

14.    Defendant, Amazon Corporation ("Amazon") is and all times relevant to this action was, a Delaware Corporation with its principal place of business located at 410 Terry Avenue North, Seattle, Washington, 98109. Amazon.com, Inc. markets, advertises, labels, distributes, and/or sells the Product at issue in this litigation.

15.    Defendant, Tower Three Partners LLC ("Tower Three") is, and at all times relevant to this action was, a Delaware Limited Liability Company with its principal place of business located at 640 West Putnam Avenue, 3rd Floor, Greenwich, CT 06830.  Tower Three is a private equity firm that acquired a controlling investment in Nurse Assist in 2018.  Due to its "controlling investment," Tower Three has/had financial control over Nurse Assist at all material times hereto.

16.    Upon reasonable information and belief, none of Tower Three's members are citizens of the State of South Carolina.

17.     Defendant, BPGC Management LP ("BPGC") is, and at all times relevant to this action was, a Delaware Limited Partnership with its principal place of business located at 1177 Avenue of the Americas, Floor 5, New York City, NY, 10036.  BPGC is a private equity firm that acquired a majority stake in Nurse Assist in January 2023.  Due to its "majority stake," BPGC has/had financial control over Nurse Assist at all material times hereto.

18.     Upon reasonable information and belief, none of BPGC's members are citizens of the State of South Carolina.

19.     Defendant, Spinnaker International LLC ("Spinnaker") is, and at all times relevant to this action was, a Georgia Limited Liability Company with its principal place of business located at 5 Concourse Parkway, Suite 3000, Atlanta, GA, 30328.  Spinnaker is a private equity firm that acquired a majority stake in Nurse Assist in January 2023.  Due to its "majority stake," Spinnaker has/had financial control over Nurse Assist at all material times hereto.

20.     Upon reasonable information and belief, none of Spinnaker's members are citizens of the State of South Carolina.

21.     Defendant, R Investments, LLC ("R Investments") is, and at all times relevant to this action was, a Delaware Limited Liability Company.  R Investments has a registered agent located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.  R Investments is a private equity firm that acquired a majority stake in Nurse Assist in January 2023.  Due to its "majority stake," R Investments has/had financial control over Nurse Assist at all material times hereto.

22.     Upon reasonable information and belief, none of R Investment's members are citizens of the State of South Carolina.

23.     Prior to the date that Plaintiff used the Product, Defendants possessed technical,

medical, and/or scientific data from which Defendants knew or should have known through the exercise of reasonable diligence that the Product was or could be contaminated and was thereby hazardous to the life, health, and safety of persons, such as Plaintiff, who were exposed to the Product.

24.     At all pertinent times, Defendants, Nurse Assist, Stateside Medical, and Amazon, were engaged in the research, development, manufacture, design, testing, packaging, labeling, sale, and marketing of the Product throughout the United States and within the State of South Carolina.

25.     At all pertinent times, Defendants, Tower Three, BPGC, Spinnaker, and R Investments, were engaged in the financial control of Nurse Assist and the Product throughout the United States and within the State of South Carolina.

26.     At all pertinent times, Defendants, Tower Three, BPGC, Spinnaker, and R Investments, as the "controlling investors" and "majority stakeholders" of the Nurse Assist SteriCare Product, profited off of the manufacture, sale, and distribution of the Product in South Carolina and throughout the United States, and are liable for injuries caused by the defective Product pursuant to an alter ego and/or piercing the corporate veil theory, as further detailed below.

## JURISDICTION AND VENUE

27.     This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiffs and Defendants are citizens of different states.

28.     At all relevant times, Defendants, individually and/or collectively, manufactured, designed, marketed, labeled, distributed, promoted, sold, and/or financially controlled the Product at issue in this litigation, which was contaminated and voluntarily recalled on or about November 6, 2023, to South Carolina consumers like Plaintiff.

29.     This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves in South Carolina and have engaged in significant, continuous, and systemic business activities and targeted contacts with the State of South Carolina. Further, Defendants regularly conduct business in the State of South Carolina relating to the promotion, marketing, distribution, sale, and/or financial control of the Product.  As such, jurisdiction over Defendants would not offend due process or traditional notions of fair play and substantial justice.

30.     This Court has specific personal jurisdiction over the Defendants because Plaintiffs' cause of action arose directly out of Defendants' contacts with South Carolina, i.e. the marketing, sale, distribution, and financial control of the contaminated Product to Plaintiff and his medical providers, which caused Plaintiff's injuries in South Carolina.

31.     At all material times hereto, Defendants had sufficient minimum contacts with South Carolina because Defendants purposefully marketed, sold, distributed, and financially controlled the Product in South Carolina, which led to Plaintiff's injuries.  These contacts were not due to any unilateral activities of Plaintiff.

32.     This Court also has specific personal jurisdiction over the Defendants due to the Product-specific business activities, including but not limited to the promotion, marketing, sale, distribution, and financial control of the adulterated and contaminated Product, which took place in the State of South Carolina and caused Plaintiff's injuries in South Carolina.

33.     Defendants are engaged in substantial and not isolated business activities within the State of South Carolina.

34.     Given the marketing, sale, and distribution of the Product to individuals and businesses in South Carolina, Defendants should reasonably anticipate being haled into court in South Carolina.  Defendants' contacts with South Carolina were not random, fortuitous, or

attenuated.

35.     Upon information and belief, Defendants are subject to jurisdiction within the State of South Carolina and this Court because at all relevant times, Defendants committed tortuous acts within the State of South Carolina out of which these causes of action arise.

36.     Venue is also proper in this district pursuant to 28 U.S.C. §§ 1391(a) and (b)(2) and 1391(c)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and the Defendants are subject to this Court's personal jurisdiction. Venue is also proper under 18 U.S.C. § 1965 (a) because Defendants transact substantial business in this district.

37.     Upon information and belief, at all relevant times, Defendants were present and transacted, solicited, and conducted business in the State of South Carolina through their employees, agents, and/or sales representatives and derived substantial revenue from such business.

38.     At all relevant times, Defendants expected or should have expected that their acts and omissions would have consequences within the United States and the State of South Carolina.

## FACTUAL ALLEGATIONS

39.     On or about January 12, 2023, Plaintiff presented to the Emergency Department for evaluation of a red and swollen left foot wound.

40.     Plaintiff was admitted to the hospital for further treatment and wound cultures indicated Plaintiff's foot wound was infected with methicillin susceptible Staphylococcus aureus (MSSA).

41.     During the hospitalization, Plaintiff underwent debridement of his foot wound and insertion of a PICC line for long term antibiotic therapy.

42.     On or about January 18, 2023, Plaintiff was discharged from the hospital with instructions to follow up with podiatry and receive home health care.

43.     Home health care providers were scheduled to visit Plaintiff to maintain his PICC line and perform wound care.

44.     Additionally, Plaintiff and Plaintiff's caregiver were trained on how to perform wound care involving the use of sterile saline.

45.     On or about January 30, 2023, Plaintiff received outpatient debridement of his foot wound and a wound vac was placed.

46.     Home health nurses and Plaintiff continued to perform wound care on his foot wound, now including servicing of the wound vac.

47.     Plaintiff underwent another outpatient debridement of his foot wound on or about February 8, 2023.

48.     On February 8, 2023, Plaintiff ordered a 500 mL bottle of SteriCare from Stateside Medical Supply on Amazon for utilization in the care of his foot wound.

49.     The saline Product was shipped to Plaintiff on or about February 9, 2023.

50.     The saline Product was applied to Plaintiff's wound on February 20-22, 2023.

51.     On February 24, 2023, Plaintiff presented to his podiatrist with labored breathing, fever, and altered mental status.

52.     Upon examination of the foot wound, the podiatrist noted dishwater purulence, severe malodor, and newly visible bone.

53.     Accordingly, Plaintiff's podiatrist instructed Plaintiff to immediately present to the Emergency Department due to concerns of necrotizing fasciitis, abscess, and/or acute osteomyelitis.

54.    Plaintiff was admitted to the hospital on February 24, 2023 with a diagnosis of shock, sepsis, fever, and cellulitis of the left lower extremity.

55.    Blood cultures from February 24, 2023 revealed strep (group A) pyogenes bacteremia.

56.    Plaintiff's infection continued to progress, requiring him to undergo a below knee amputation of the left extremity on February 25, 2023 due to sepsis.

57.    Plaintiff was required to undergo a revision of the amputation on February 27, 2023 due to bleeding at the surgical site.

58.    On or about November 6, 2023, Defendants initiated a voluntary recall of the Product because the Product was nonsterile and potentially contaminated with bacteria.

59.    In the voluntary recall, Defendants admitted that "[i]n populations most at risk, such as patients who are immunocompromised, there is a possibility the use of the affected product could potentially result in severe of life-threatening adverse events."[3]

60.    On December 7, 2023, Plaintiff received notification from Amazon regarding the Nurse Assist recall, confirming the Product utilized by Plaintiff, which was manufactured, imported, sold, marketed, labeled, and distributed by Nurse Assist, and sold, distributed, and supplied by Stateside Medical Supply and Amazon, was subject to the voluntary recall initiated by Defendants.

61.    Plaintiff could not, by reasonable care, have averted damage and injury, as a result of using the contaminated Product.

62.    As a result of Plaintiff's use of Defendants' Product, he contracted a serious

---

[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/nurse-assist-llc-issues-recall-09-sodium-chloride-irrigation-usp-and-sterile-water-irrigation-usp#:~:text=for%20Irrigation%20USP-,Company%20Announcement,result%20in%20a%20nonsterile%20product (last accessed February 6, 2026).

infection which caused him to develop necrotizing fasciitis and sepsis, which lead to a below the knee amputation.

63.     Plaintiff's injuries are debilitating and permanent.

## TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, EQUITABLE TOLLING, AND CONTINUING VIOLATIONS

64.     Despite diligent investigation by Plaintiff into the cause of his injuries, including consultations with his medical providers, the nature of his injuries and damages and their relationship to the Product was not discovered, and through reasonable care and diligence could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiffs' claims. Plaintiff did not and could not have become aware of the potential link between Plaintiff's injuries and the contaminated product until Plaintiff reviewed the recall notice he received on November 7, 2023, at the very earliest. Therefore, under appropriate application of the discovery rule, Plaintiff's suit was filed well within the applicable statutory limitations period.

65.     Additionally, any applicable statutes of limitation have been tolled by Defendants' affirmative acts of fraudulent concealment and continuing misrepresentations and/or violations of the CGMPs, as the facts alleged herein reveal.

66.     Because of the self-concealing nature of Defendants' actions and their affirmative acts of violating the requisite CGMPs, Plaintiffs assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

67.     Defendants are estopped from relying on any statute of limitations defense because of their unfair, negligent, and deceptive conduct.

68.     By reason of the foregoing, the claims of Plaintiffs are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

69.     As pled below, Plaintiffs seeks the application of the law of Plaintiff's domicile and forum state, South Carolina. However, should this court determine in a "choice of law" analysis that another state's law should apply to this matter, Plaintiffs reserves the right to recover under the laws of that state.

## CLAIMS FOR RELIEF

### COUNT ONE: VIOLATION OF SOUTH CAROLINA CODE 1976 § 15-73-10
(Against All Defendants)

70.     Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

71.     Plaintiffs bring a product liability action against Defendants, as described in § 15-73-10(1).

72.     Defendants are liable to suit under § 15-73-10(1) because Defendants are "engaged in the business of selling [the Product]" and the "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

73.     Defendants, as product manufacturers and/or sellers, are liable to Plaintiffs under South Carolina law because the SteriCare Product deviated from the design specifications, formulae, or performance standards of the manufacturer, failed to contain adequate warnings or instructions (as detailed further in the allegations below), and was designed in a defective manner.

74.     Defendants, as product manufacturers and/or sellers, exercised some significant control over the design, manufacture, packaging, labeling, sale, and/or distribution of the SteriCare Product relative to the alleged defect in the product (*i.e.*, the unsterile, adulterated, and contaminated saline fluid) which caused the injury.

75.     As a result of Defendants' sale of the Product in a defective condition unreasonably dangerous to Plaintiff, Plaintiff suffered severe infection and below the knee amputation.

76.     Defendants are liable in tort to Plaintiffs for their wrongful and reckless conduct pursuant to South Carolina common and statutory law.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory damages, punitive damages, costs of this action, and pre-judgment interest in an amount in excess of seventy-five-thousand dollars ($75,000.00).

## COUNT TWO:  STRICT PRODUCTS LIABILITY – FAILURE TO WARN
### (Against All Defendants)

77.     Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

78.     Defendants sold the SteriCare Product in the course of Defendants' business.

79.     Upon receiving the SteriCare Product, the Product packaging and labeling was reviewed, including the instructions for use.

80.     At all pertinent times, the Product was used by Plaintiff to clean his leg wounds, which is a reasonably foreseeable use.

81.     Defendants knew or should have known that the Product was not sterile and adulterated and/or contaminated with a dangerous and deadly bacterium.

82.     At all pertinent times of sale and use, the SteriCare Product, when put to the aforementioned reasonably foreseeable use, was in an unreasonably dangerous and defective condition because it failed to contain adequate and proper warnings and/or instructions regarding the potential presence of—and dangers of—pathogens within the bottles and/or packaging of the Product. Defendants themselves failed to properly test and adequately warn and instruct as to the risks and benefits of the Product, thus breaching the duty owed by Defendants to Plaintiff.

83.     Defendants knew that the risk of exposure to an unsterile, adulterated, and contaminated saline fluid was not readily recognizable to an ordinary consumer and that consumers

would not inspect the product for sterility.

84.    Defendants were aware of the fact that their Product was used in a patient population that was already at risk, i.e. patients with wounds that would suffer greatly from an unsterile, adulterated, and/or contaminated saline fluid.

85.    Defendants did not adequately test and/or give adequate warnings that the Product was unsterile, adulterated, and contaminated.

86.    Thus, Defendants acted willfully and wantonly in their wrongful and reckless conduct by manufacturing, selling, distributing, and profiting off of an unsterile saline fluid used in an at-risk patient population.

87.    Plaintiff was justified in his reliance on Defendants' manufacturing, labeling, packaging, marketing, and advertising of the Product for use as sterile saline fluid. Had Plaintiff received notice or a warning that the Product was unsterile, adulterated, and contaminated, he would not have used the Product, and, accordingly, Plaintiff would not have required amputation.

88.    Defendants' SteriCare Product was defective because Defendants failed to perform proper testing on the Product, the Product failed to contain warnings and/or instructions, the Product breached express warranties, and/or the Product failed to conform to express factual representations upon which Plaintiff justifiably relied in electing to use the Product. The defect or defects (*i.e.*, the *preventable*—or, at the very least, detectable before sale— unsterile, adulterated, and contaminated saline fluid) made the Product unreasonably dangerous to persons, such as Plaintiff, who could reasonably be expected to use such product. As a result, the defect or defects were a producing cause of Plaintiff's injuries and damages.

89.    Defendants' SteriCare Product failed to contain adequate warnings and/or instructions regarding the potential presence of—and dangers of—a pathogen within the SteriCare

Product.

90.     Defendants' SteriCare Product failed to contain adequate warnings that the use of the unsterile, adulterated, and contaminated saline fluid could lead to a severe life-threatening infection.

91.     As a proximate result of Defendants' design, manufacture, packaging, labeling, marketing, sale, and distribution of SteriCare Product, Plaintiff was injured catastrophically and was caused severe pain, suffering, and loss of enjoyment.

92.     Defendants are strictly liable to Plaintiffs for their wrongful and reckless conduct pursuant to South Carolina common and statutory law.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory damages, punitive damages, costs of this action, and pre-judgment interest in an amount in excess of seventy-five-thousand dollars ($75,000.00).

### COUNT THREE: STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN AND MANUFACTURE
### (Against All Defendants)

93.     Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein,

94.     At all times material to this action, in the course and scope of its business, Defendants were engaged in the sale and/or marketing and/or design, and/or manufacture, and/or distribution of SteriCare Product, including the saline utilized by Plaintiff.

95.     Defendants engaged in the design, development, manufacture, marketing, packaging, labeling, sale, distribution, and financial control of the SteriCare Product in a defective and unreasonably dangerous condition to consumers, including Plaintiff.

96.     Defendants caused the SteriCare Product to enter the stream of commerce and to

be sold through various retailers, which is how Plaintiff received the Product.

97.     The SteriCare Product was expected to, and did, reach consumers, including Plaintiff, without change in the condition in which it was manufactured and sold by Defendants and/or otherwise released into the stream of commerce.

98.     Plaintiff used the SteriCare Product in a manner normally intended, recommended, promoted, and marketed by Defendants.

99.     Defendants knew, or should have known, the SteriCare Product would be used in the way it was used with Plaintiff.

100.     Defendants violated CGMPs by manufacturing and producing an unsterile saline Product and failed, among other things, to properly test the Product for sterility and contaminants before placing the Product into the stream of commerce for consumers, like Plaintiff, to use.

101.     The SteriCare Product failed to perform safely when used by Plaintiff in a reasonably foreseeable manner; that is, the unsterile, adulterated, and contaminated saline fluid rendered the Product unreasonably dangerous and exposed Plaintiff to a bacterium that caused him to suffer and/or exacerbate a serious infection, which resulted in amputation.

102.     The SteriCare Product contained a manufacturing defect when it left the possession of Defendants. Specifically, the SteriCare Product differs from Defendants' intended result or from (possibly) other lots of the same product line because they were unsterile, adulterated, and contaminated, and Defendants failed to properly and adequately test the Product for sterility before distributing it.

103.     Additionally, Defendants defectively designed the bottle that contained the SteriCare saline fluid, such that it contributed to the contamination and growth of bacteria.

104.     Significantly, the SteriCare Product is a saline fluid that is required to be sterile due

to its use in wound care.  Safer alternatives, including sterile, unadulterated, and uncontaminated saline product, exist and have been readily available for decades.

105.    As a proximate result of Defendants' design, manufacture, packaging, labeling, marketing, sale, and distribution of the Product, Plaintiff was injured catastrophically and was caused to endure severe pain, suffering, and economic damages.

106.    Defendants are strictly liable to Plaintiffs for their wrongful and reckless conduct pursuant to South Carolina common and statutory law.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory damages, punitive damages, costs of this action, and pre-judgment interest in an amount excess of seventy-five-thousand dollars ($75,000.00).

## COUNT FOUR: NEGLIGENT DESIGN
### (Against All Defendants)

107.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

108.    Defendants, as manufacturers and sellers of the SteriCare Product, owed a duty to consumers, including Plaintiff, to exercise reasonable care to design, test, manufacture, inspect, and to distribute a product free of the unreasonable risk of harm when put to its reasonably anticipated use.

109.    Defendants, as the manufacturers and sellers of the SteriCare Product, had a duty to hold the knowledge and skill of an expert and were obliged to keep abreast of any scientific discoveries and are presumed to know the result of all such advances.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory damages, punitive damages, costs of this action, and pre-judgment interest in an amount excess of seventy-five-thousand dollars ($75,000.00).

## COUNT FIVE: NEGLIGENT FAILURE TO WARN
### (Against All Defendants)

110.     Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

111.     At all relevant times, Defendants engaged in the design, development, manufacture, marketing, sale, and distribution of the SteriCare Product that was in a defective and unreasonably dangerous condition and was nonetheless marketed and sold to consumers, including Plaintiff.

112.     Defendants were aware of the fact that their Product was used in a patient population that was already at risk, i.e. patients that required wound care and would suffer greatly from an unsterile, adulterated, and/or contaminated saline fluid.

113.     Defendants knew, or by the exercise of reasonable care should have known, use of the SteriCare Product was dangerous, harmful, and injurious when used by Plaintiff in a reasonably foreseeable manner.

114.     Defendants knew, or by the exercise of reasonable care, should have known that ordinary consumers, such as Plaintiff, would not have realized the potential risks and dangers of the SteriCare Product, and that the SteriCare Product was likely to increase the risks of infection and/or exacerbate infection, which renders it unreasonably dangerous when used in the manner it was intended and to an extent beyond what would be contemplated by the ordinary consumer.

115.     Defendants owed a duty to all reasonably foreseeable consumers to disclose the risks associated with the use of the SteriCare Product.

116.     Defendants breached their duty of care by failing to use reasonable care in providing adequate warnings on the SteriCare Product, including that the Product was likely to increase the risks of infection and/or exacerbate infection, which when used in the manner it was intended and to an extent beyond that would be contemplated by the ordinary consumer.

117.    Defendants' failure to adequately warn about their defective Product, and their efforts to misleadingly advertise through conventional avenues, created a danger of injuries that were reasonably foreseeable at the time of design and/or manufacture and distribution.

118.    At all relevant times, Defendants could have provided adequate warnings and instructions to prevent the harms and injuries set forth herein, such as providing full and accurate information about the SteriCare Product in advertising.

119.    A reasonable actor under the same or similar circumstances would have warned and instructed of the dangers associated with an unsterile, adulterated, and contaminated product and the potential presence of pathogens and/or bacteria.

120.    Upon receiving the SteriCare Product, Plaintiff reviewed the Product packaging and labeling, including the instructions for use.

121.    Plaintiff was injured as a direct and proximate result of Defendants' failure to warn and instruct, because he would not have used the SteriCare Product had he received adequate warnings and instructions that the Product could increase the risks of severe infection, which renders it unreasonably dangerous when used in the manner it was intended and to an extent beyond what would be contemplated by the ordinary consumer.

122.    Defendants' lack of adequate and sufficient warnings and instructions, and their inadequate and misleading advertising, was a substantial contributing factor in causing harm to Plaintiff.

123.    As a proximate result of Defendants' design, manufacture, marketing, packaging, labeling, sale, and distribution of the Product, Plaintiff was injured catastrophically and was caused to endure severe pain, suffering, and economic damages.

124.    Defendants are liable in tort to Plaintiffs for their wrongful and reckless conduct

pursuant to South Carolina common and statutory law.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory damages, punitive damages, costs of this action, and pre-judgment interest in an amount excess of seventy-five-thousand dollars ($75,000.00).

## COUNT SIX: NEGLIGENT MISREPRESENTATION
### (Against All Defendants)

125.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

126.    Through their labeling, advertising, and over the course of their regular business, Defendant, Nurse Assist, made representations to Plaintiff concerning the active and inactive ingredients (as well as the alleged uncontaminated nature) in the SteriCare Product.

127.    Defendants intended that the Plaintiff rely on their representations.

128.    Defendants' representations were material to Plaintiff's decision to use the Product.

129.    Defendants have a duty to provide accurate information to consumers with respect to the ingredients and/or contaminants identified in the SteriCare Product, as detailed above.

130.    Defendants failed to fulfill their duty to provide accurate information and disclose in the Product labeling and advertising the Product was unsterile, adulterated, and contaminated with bacteria.

131.    Additionally, Defendants have a duty to not make false representations with respect to the Product.

132.    Defendants failed to fulfill their duty or use ordinary care when they made false representations and omissions regarding the quality and safety of the SteriCare Product, as detailed above.

133.    Such failures to disclose on the part of Defendants amount to negligent omission,

and the representations regarding the quality and safety of the product amount to negligent misrepresentation.

134.    Plaintiff reasonably relied upon such representations and omissions to his detriment.

135.    As a proximate result of Defendants' design, manufacture, marketing, sale, distribution, and financial control of the SteriCare Product, Plaintiff was injured catastrophically and was caused severe pain, suffering, and economic damages.

136.    Defendants are liable in tort to Plaintiffs for their wrongful and reckless conduct pursuant to South Carolina common and statutory law.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory damages, punitive damages, costs of this action, and pre-judgment interest in an amount excess of seventy-five-thousand dollars ($75,000.00).

## COUNT SEVEN: BREACH OF IMPLIED WARRANTY
### (Against All Defendants)

137.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

138.    Because the SteriCare Product is unsterile, adulterated, and contaminated with bacteria, it is not of the same quality as those generally acceptable in the trade and is not fit for the ordinary purposes for which such saline fluid is used.

139.    Plaintiff used the SteriCare Product in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

140.    The SteriCare Product was not altered by Plaintiff.

141.    Plaintiff was a foreseeable user of the SteriCare Product.

142.    The SteriCare Product was used in the manner intended.

143.    As alleged, Defendants' saline fluid was not adequately labeled and did not disclose that it was unsterile, adulterated, and contaminated with bacteria.

144.    The SteriCare Product did not measure up to the promises or facts stated in the marketing, packaging, labeling, advertisement, and communications by and from Defendants.

145.    Defendants impliedly warranted that the SteriCare Product was merchantable, fit, and safe for ordinary use.

146.    Defendants further impliedly warranted that the SteriCare Product was fit for the particular purposes for which it was intended and sold.

147.    Contrary to these implied warranties, Defendants' saline fluid was defective, unmerchantable, and unfit for its ordinary use when sold and unfit for the particular purpose for which it was sold.

148.    As a proximate result of Defendants' design, manufacture, marketing, sale, distribution, and financial control of the SteriCare Product, Plaintiff was injured catastrophically and was caused severe pain, suffering, and economic damages.

149.    Defendants are liable in tort to Plaintiffs for their wrongful and reckless conduct pursuant to South Carolina common and statutory law.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory damages, punitive damages, costs of this action, and pre-judgment interest in an amount excess of seventy-five-thousand dollars ($75,000.00).

### COUNT EIGHT: LOSS OF CONSORTIUM
### (Against All Defendants)

150.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

151.    At all times material hereto, Plaintiff-Wife, Jamie Crummie, was married to

Plaintiff, Charles Crummie. As a result of the injuries and damages sustained by Mr. Crummie, Jamie Crummie has suffered the loss of care, comfort, society and affections from Mr. Crummie.

152. Defendants are liable in tort to Plaintiffs for their wrongful conduct pursuant to South Carolina common and statutory law.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory damages, punitive damages, costs of this action, and pre-judgment interest in an amount excess of seventy-five-thousand dollars ($75,000.00).

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, having fully set forth the ground of his Complaint, Plaintiffs ask this Court for judgment against the Defendants, both jointly and severely, for **ACTUAL, PUNITIVE,** and **CONSEQUENTIAL DAMAGES** and for such other and further relief, as this Court may deem fair, just, and proper.

Dated: February 9, 2026                     **MOTLEY RICE, LLC**

<u>/s/ Roger M. "Hank" Young, Jr.</u>
Roger M. "Hank" Young, Jr. (Federal ID 12466)
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
(843) 216-9091 Phone
(843) 216-9450 Facsimile
hyoung@motleyrice.com

Michael G. Daly, Esq. (*pro hac vice* forthcoming)
Joshua M. Neuman, Esq. (*pro hac vice* forthcoming)
1717 Arch Street, Suite 3610
Philadelphia, Pennsylvania 19103
mdaly@motleyrice.com
jneuman@motleyrice.com
Phone: (267) 267-4740
Fax: (267) 267-4759

*Attorneys for Plaintiffs*